United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWONNA MONIQUE HOWARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL ASTRUE,<br><br>　　　　Defendant.<br>_____/ | No. C-11-02172 DMR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Dewonna Monique Howard moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision finding her not disabled and denying her application for benefits under Title XIV of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Commissioner cross-moves to affirm. For the reasons below, the court grants the Commissioner's motion and denies Plaintiff's motion.

**I. Procedural History**

Plaintiff Howard filed for Title XIV supplemental security income ("SSI") alleging a disability onset date of September 1, 2001. (A.R. 121-126.) Plaintiff's application was initially denied on June 15, 2007 (A.R. 62-65), and again on reconsideration on March 7, 2008 (A.R. 67-71). Plaintiff requested a hearing. (A.R. 72.) After the September 2, 2009 hearing, the administrative law judge ("ALJ") issued a Notice of Decision. (A.R. 26-37.)

The ALJ determined that Plaintiff suffers from depressive disorder, mood disorder not otherwise specified, idiopathic back pain, and obesity, which are severe impairments. (A.R. 31.) The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in the regulations. As to residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform medium work as defined in 20 C.F.R. 416.967(c), with the following additional limitations:

> Plaintiff can understand, remember, and carry out at least simple instructions and non-detailed tasks, respond appropriately to supervisors and co-workers, adapt to routine/simple work changes, and should not work in a setting which includes constant/regular contact with the general public.

(A.R. 31-32.) A vocational expert testified at the hearing that an individual with Plaintiff's age, education, work experience, and such an RFC could perform a number of jobs that exist in significant numbers in the economy. Relying upon that testimony, the ALJ concluded that Plaintiff is not disabled. (A.R. 37.)

Plaintiff filed a request for review of the hearing in February 2010 (A.R. 8), which the Appeals Council denied on February 25, 2011. (A.R. 1-3.) The ALJ's decision therefore became the final decision of the Commissioner. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. Issues Presented

I. Whether the ALJ properly evaluated the opinions of Plaintiff's treating and examining physicians;

II. Whether substantial evidence supports the ALJ's finding that Plaintiff's testimony was not credible;

III. Whether the ALJ failed to develop the record and thus committed legal error;

IV. Whether the ALJ erred in finding that Plaintiff neither met nor equaled any of the listed impairments; and

V. Whether the ALJ erred in questioning the vocational expert.

## III. Standard of Review

2

Plaintiff seeks review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court will uphold an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is evidence within the administrative record that a reasonable mind could accept as support on which to base a conclusion regarding disability. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted). The court "will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that his error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th 2008).

## IV. Discussion

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Physicians

In finding that Plaintiff was not disabled, the ALJ rejected the opinions of Plaintiff's treating physician, Dr. Lester Love, examining physician Dr. Ede Thomsen, and non-examining physician Dr. Deanna van Ligten, and instead relied on the opinions of examining physician Dr. Ute Kollath and two non-examining, non-treating state agency psychiatric consultants, Dr. Donald Williams and Dr. David Gross. Plaintiff argues that in so doing, the ALJ misapplied the regulatory standard for considering physician opinions. (Pl.'s Mot. 11-17, 21-22.) Upon review of the record, the court finds that the ALJ properly weighed the physicians' medical opinions in his determination.

#### 1. Applicable Law

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor

treat the claimant ("nonexamining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A nonexamining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a nonexamining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(d)(4).

**2. Analysis**

**a. Dr. Ede Thomsen**

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Ede Thomsen, who examined Plaintiff in June 2009. In her report, Dr. Thomsen found that Plaintiff had a severe deficit in the following areas: attention, concentration, pace, and persistence; executive functioning; language abilities; and visual/spatial abilities. (A.R. 446-447.) She opined that due to limitations in Plaintiff's cognitive functioning, "she could not sustain simple or complex tasks for up to eight hours," and assessed Plaintiff with a Global Assessment of Functioning ("GAF")[1] score of 35, which indicates "some impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (A.R. 453; Pl.'s Mot. 6 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32).) Plaintiff argues that the ALJ failed to provide "specific and legitimate reasons based on substantial evidence" to discount Dr. Thomsen's opinion. (Pl.'s Mot. 11.) Plaintiff also argues that it was legal error for the ALJ to give less weight to the opinion because Plaintiff's attorney arranged Dr. Thomsen's examination of Plaintiff. (Pl.'s Mot. 12.)

The court finds that the ALJ provided "specific and legitimate reasons" supported by substantial evidence to deviate from Dr. Thomsen's opinion. *See Lester*, 81 F.3d at 830-31. The ALJ noted the extremely low GAF score that Dr. Thomsen assigned to Plaintiff, and wrote that her assessment regarding Plaintiff's GAF score was "not consistent with someone who lives independently, attends school, and has the mental and physical ability to commit burglary." (A.R. 35.) In declining to give any significant weight to Dr. Thomsen's opinion, the ALJ also found Dr. Thomsen's opinion "unreliable and inconsistent with the medical records and the statements of the claimant and a third party." (A.R. 35.)

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32). It is "relevant evidence" of the claimant's ability to function mentally. *England v. Astrue*, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

1    A review of the other GAF scores assigned to Plaintiff supports the ALJ's analysis. In 2006, Plaintiff was assigned GAF scores between 39 and 45. (A.R. 319, 336, 377.) However, in May 2007, after receiving mental health treatment, she was assigned a GAF score of 55. (A.R. 382.) Two years later, in June 2009, just six days before Dr. Thomsen's assessment, she was assigned a GAF score of 60 by a staff member at LifeLong Medical Care (A.R. 493), where Plaintiff was seen 11 times between May 2009 and September 2009, the date of the hearing. (A.R. 454-493.) In July 2009, less than one month after Dr. Thomsen's assessment, Plaintiff was assigned GAF scores of 70 (A.R. 457) and 50 (A.R. 454) at LifeLong Medical Care.

In addition, at the time of Dr. Thomsen's examination, Plaintiff was attending school at Berkeley Community College and had already completed three semesters. (A.R. 444.) Notes from July 2009 by a staff member at LifeLong Medical Care reflect that Plaintiff "is motivated to attend [and] complete school . . . she wants to be a social worker and has 15 months to complete her double AA in liberal arts and social service." (A.R. 455.) Another staff member had noted earlier that month that Plaintiff was in college "and apparently doing well." (A.R. 458.)

Dr. Thomsen's assessment was also contradicted by Plaintiff's own statements and the statements of a third-party, Etta Evans, as noted by the ALJ. In her opinion, Dr. Thomsen concluded that Plaintiff's "symptoms of Bipolar I Disorder and anxiety along personality disorders" result in "difficulty . . . managing daily tasks and affairs." (A.R. 453.) Dr. Thomsen further opined that Plaintiff's "mental illnesses are debilitating for Ms. Howard's daily functioning." (A.R. 453.) Yet, as the ALJ pointed out, Plaintiff stated in September 2007 that "she went to Berkeley City College, prepared frozen food, walked, used public transportation, shopped for food weekly, watched television, listened to music, and went to NA/AA meetings." (A.R. 36; *see* A.R. 176-183.) Etta Evans, the assistant director of the housing facility in which Plaintiff resided, submitted a third-party statement in September 2007 in which she described Plaintiff's daily routine. (A.R. 184-191.) Ms. Evans noted that Plaintiff "showered, got dressed, did chores, went to school Monday to Friday, had dinner, attended required in house therapy classes . . . did her assigned chores and her own laundry." (A.R. 36.) These statements regarding Plaintiff's daily activities appear to be inconsistent with Dr. Thomsen's opinion that Plaintiff had difficulty "managing daily tasks and affairs" and that her

"mental illnesses" were "debilitating for [her] daily functioning." Accordingly, given the inconsistency between Dr. Thomsen's assessment, who examined Plaintiff only once, and the assessments made by staff at LifeLong Medical Care, who had a long-term relationship with Plaintiff, *see* 20 C.F.R. § 416.927(d) (directing ALJ to consider the nature, extent, and duration of the relationship between the claimant and the source when weighing medical source opinions), as well as other evidence in the record, including Plaintiff's own statements, the court cannot say that the ALJ's decision to decline to give Dr. Thomsen's opinion any significant weight was not supported by substantial evidence.

Plaintiff's argument that it was legal error for the ALJ to give less weight to Dr. Thomsen's opinion because Plaintiff's attorney arranged the examination is also without merit. The ALJ wrote that "Dr. Thomsen performed this evaluation at the request of the attorney for this proceeding and only saw the claimant on one occasion without establishing a treatment relationship." (A.R. 35.) While "the purpose for which a report was obtained does not provide a legitimate basis for rejecting it," the Ninth Circuit has held that "[e]vidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could . . . form a legitimate basis for evaluating the reliability of the report." *Reddick*, 157 F.3d at 726. Here, the fact that Plaintiff's attorney requested the evaluation by Dr. Thomsen was not the only reason the ALJ gave for not giving significant weight to her opinion. The ALJ offered other reasons, including inconsistencies between Dr. Thomsen's opinion and other evidence in the record, as discussed above. Accordingly, the court finds no legal error in the ALJ's refusal to accord Dr. Thomsen's opinion significant weight.

### b.     Dr. Lester Love

Plaintiff next argues that the ALJ erred in rejecting the treating source opinion of Dr. Lester Love, the Associate Medical Director of LifeLong Medical Care. (Pl.'s Mot. 14.) Dr. Love provided a brief, one-page "psychiatric disability summary" in September 2009 in which he opined that Plaintiff had a "[r]estricted ability to perform even basic activities of daily living," "[e]xtreme difficulties in maintaining social functions," and "[d]ifficulties in maintaining concentration, persistence, or pace." (A.R. 505.) The ALJ found that Dr. Love's assessment regarding Plaintiff's

7

1  "restricted ability to perform even basic activities of daily living" was contradicted by the May 2007
2  opinion of examining physician Dr. Ute Kollath, as well as the May 2009 assessment by Carol Ann
3  Amen Vivrette, a Learning Disabilities Specialist.  The ALJ concluded that Dr. Love's opinion was
4  not persuasive.  (A.R. 35.)  Plaintiff argues that Dr. Love's opinion was not actually contradicted by
5  Dr. Kollath's opinion (Pl.'s Mot. 14-15), nor was it contradicted by Ms. Vivrette's assessment (Pl.'s
6  Mot. 16), and that the ALJ improperly weighed the opinions.

7  Dr. Love was an examining physician.  If his opinion was uncontradicted, the ALJ was
8  required to provide "clear and convincing reasons" supported by substantial evidence to discount his
9  opinion.  If his opinion was contradicted, the ALJ had to provide "specific and legitimate reasons"
10 supported by substantial evidence to do so.  *See Lester*, 81 F.3d at 830-31.  Here, the ALJ
11 specifically stated that he found Dr. Love's opinion contradicted by both Dr. Kollath's opinion and
12 Ms. Vivrette's assessment.  (A.R. 35.)  Dr. Kollath examined Plaintiff in May 2007 and concluded
13 that Plaintiff was "independent for basic [activities of daily living] . . . does not need help with
14 preparing meals . . . is able to drive . . . [and] is able to make change at the store."  (A.R. 380.)  Dr.
15 Kollath assigned Plaintiff a GAF score of 55.  (A.R. 381.)  Plaintiff argues that the two opinions are
16 not contradictory because "they are temporally distant and qualitatively distinct."  (Pl.'s Mot. 14.)
17 Plaintiff's argument appears to be that Dr. Love's conclusion regarding Plaintiff's impairment in
18 performing basic activities indicates a decline in Plaintiff's condition, and therefore it is not
19 contradicted by Dr. Kollath's opinion that she was independent more than two years earlier.  (Pl.'s
20 Mot. 14-15.)  However, the record does not clearly support the theory that Plaintiff's condition was
21 worsening during that time period.  As discussed above, Plaintiff was assigned GAF scores of 60,
22 70, and 50 by the staff at LifeLong Medical Care in the months leading up to Dr. Love's opinion.
23 (A.R. 493, 457, 454.)  Plaintiff had also completed three semesters of college between Dr. Kollath's
24 examination and Dr. Love's opinion.

25 As to Ms. Vivrette, the ALJ wrote that her assessment contradicted Dr. Love's statement that
26 Plaintiff "had an inability to concentrate."  (A.R. 35.)  Ms. Vivrette, a Learning Disabilities
27 Specialist at Berkeley City College, assessed Plaintiff in May 2009, just four months before Dr.
28 Love issued his opinion.  She administered a number of tests, including a Wechsler Adult

8

1  Intelligence Scale test, on which Plaintiff scored a verbal IQ of 90, performance IQ of 87, and full-
2  scale IQ of 88. (A.R. 286.) Ms. Vivrette issued a 26-page report in which she concluded that
3  Plaintiff met the learning disability criteria, which require that a student demonstrate "a. average to
4  above average intellectual ability, b. severe processing deficit(s), c. severe aptitude-achievement
5  discrepancy(ies), and d. measured achievement in an instructional or employment setting." (A.R.
6  274.) She recommended Plaintiff be afforded a number of academic accommodations, including
7  extended test time and time on in-class writing assignments, but noted that "[t]hroughout the testing,
8  [Plaintiff] showed her academic potential by her persistence in completing tasks she found to be
9  difficult. She maintained a sense of humor, and showed self confidence and self awareness." (A.R.
10 276-277.) In contrast, Dr. Love offered no supporting evidence for his conclusion that Plaintiff had
11 an "inability to concentrate." (A.R. 505.) *See* 20 C.F.R. § 416.927(d)(3) (ALJ evaluates medical
12 source statements based in part on the extent to which a "source presents relevant evidence to
13 support an opinion").

14  The court concludes that substantial evidence supports the ALJ's conclusion that Dr. Love's
15 opinion was contradicted by Dr. Kollath's opinion and Ms. Vivrette's assessment. The court also
16 finds that the ALJ satisfied the requirement to provide "specific and legitimate reasons" supported
17 by substantial evidence to discount Dr. Love's opinion. *Lester*, 81 F.3d at 830. The ALJ cited
18 contradictions between Dr. Love's opinion on the one hand, and Dr. Kollath's opinion, Ms.
19 Vivrette's assessment and Plaintiff's test results on the other, in concluding that Dr. Love's opinion
20 was not persuasive (A.R. 35). *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an
21 opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ
22 gave greater weight to Dr. Kollath's opinion, which itself constituted substantial evidence. *See*
23 *Tonapetyan*, 242 F.3d at 1149 (examining physician's "opinion alone constitutes substantial
24 evidence, because it rests on his own independent examination" of a claimant.) Accordingly, the
25 court finds no legal error in the ALJ's discounting of Dr. Love's opinion.

     **c. Dr. Leanna van Ligten**

9

Plaintiff also argues that the ALJ improperly dismissed the non-examining opinion of Dr. Deanna van Ligten, and improperly relied on the findings of non-examining state psychiatric consultants Dr. Donald Williams and Dr. David Gross. (Pl.'s Mot. 21.)

Dr. van Ligten opined in December 2007 that "it does appear that Ms. Howard is significantly limited in her social interactions and adaptation, and that this limitation is so severe that it impairs her ability to perform certain functional activities." (A.R. 420.) However, Dr. van Ligten based her opinion on a review of notes taken by a student therapist that Plaintiff had seen for an unknown number of sessions in September 2007, and not upon her own examination of Plaintiff. Further, she specifically noted that as the "notes and records regarding [Plaintiff] were formulated by a student therapist in training," and that she "did not have direct contact with" Plaintiff, *"commenting about her ability to do physical and/or mental activity is not entirely possible."* (A.R. 420 (emphasis added).) The ALJ stated that Dr. van Ligten's opinion was not entitled to any weight as she did not have direct contact with Plaintiff. (A.R. 35.) As a non-examining physician, the ALJ was entitled to base the weight he gave her opinion on "the degree to which [she provided] supporting explanations for [her] opinion." 20 C.F.R. § 416.927(d)(3). Dr. van Ligten provided no support for her statement that Plaintiff was "significantly limited in her social interactions and adaptation," and even qualified her opinion with the statement that "commenting about her ability to do physical and/or mental activity is not entirely possible." (A.R. 420.) Accordingly, the court finds no legal error in the ALJ's rejection of Dr. van Ligten's opinion.

The court also finds no legal error in the ALJ's reliance on the opinions of non-examining Drs. Gross and Williams. Dr. Gross opined in October 2007 that Plaintiff's understanding, memory, concentration, and attention were "adequate for 1-2 step tasks" "for a full workday and full workweek," and that Plaintiff's "[s]ocial interaction capacity [was] adequate for dealing with peers and supervisors, but not with the public." (A.R. 408.) He also found that Plaintiff's "depressive disorder and substance disorder in short remission resulted in a mild limitation in activities of daily living, a moderate limitation in social functioning, a moderate limitation in maintaining concentration, persistence, or pace, and one or two episodes of decompensation." (A.R. 34.) Dr.

1  Williams opined in June 2007 that Plaintiff's mental affective disorder was "not severe," and that
2  Plaintiff had no functional limitations. (A.R. 384, 392.)
3        The ALJ concluded that their assessments, along with Dr. Kollath's opinion, were consistent
4  with the overall evidence. (A.R. 35.) Plaintiff argues that the evidence does not support that
5  conclusion, and that the only evidence consistent with Dr. Williams' and Dr. Gross' opinions was
6  the May 2007 opinion by Dr. Kollath.[2] (Pl.'s Mot. 21.) With respect to Dr. Gross' opinion, the
7  court disagrees. In addition to Dr. Kollath's opinion, there is other evidence in the record that
8  supports his assessments. For example, in Ms. Vivrette's May 2009 assessment, she stated that
9  during testing, Plaintiff "showed her academic potential by her persistence in completing tasks she
10 found to be difficult. She maintained a sense of humor, and showed self confidence and self
11 awareness" (A.R. 276-277), which supports Dr. Gross' opinion that Plaintiff only had a moderate
12 limitation in "maintaining concentration, persistence, or pace." The evidence of Plaintiff's daily
13 activities, as described by Plaintiff herself and by Ms. Evans, further supports his conclusion that
14 Plaintiff was only mildly limited in activities of daily living. Finally, the evidence of Plaintiff's
15 successful completion of three semesters of college, as well as her improving GAF scores in 2009,
16 further supports Dr. Gross' opinion. As the ALJ was entitled to base the weight he gave their
17 opinions on the degree to which the opinions were "consistent . . . with the record as a whole," 20
18 C.F.R § 416.927(d)(4), the court finds no legal error in the ALJ's reliance on the opinions of Drs.
19 Williams and Gross.

      **B.**    **The ALJ Did Not Err in Assessing Plaintiff's Credibility**

21       Plaintiff next challenges the ALJ's determination that she was not fully credible. Upon
22 review of the record, the court finds that the ALJ's credibility finding was supported by substantial
23 record evidence.

---

[2] The court finds that Dr. Williams' assessment that Plaintiff had no functional limitations was not consistent with the overall evidence, as all other physicians who provided opinions on Plaintiff's mental functioning concluded that she was at least somewhat functionally impaired. However, the ALJ did not solely rely on Dr. Williams' assessment in concluding that Plaintiff is not disabled, as discussed above. Therefore, the court finds the ALJ's error harmless. *See Tommasetti*, 533 F.3d at 1038 (defining harmless error as "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination" (citation and quotation marks omitted)).

### 1. Applicable Law

"If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must support a finding that the claimant's subjective testimony is not reliable with specific, clear and convincing evidence from the record. *Id*. at 958-59. "The ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Id*. (internal citation omitted). The court may not second-guess the ALJ's credibility finding if it is supported by substantial evidence in the record. *Id.* at 959.

### 2. Analysis

Plaintiff argues that the ALJ did not offer "specific, clear and convincing reasons" for rejecting her testimony. (Pl.'s Mot. 17-20.) Specifically, Plaintiff argues that her daily activities do not conflict with her allegations of severe impairments, and that her ability to commit burglary and past work history do not show that she can work and are not proper bases on which to challenge her credibility.

After examining the record as a whole, the court concludes that the ALJ did not discount Plaintiff's testimony arbitrarily. Rather, the ALJ found her not fully credible on permissible grounds, offering specific reasons supported by substantial evidence. The ALJ discussed Plaintiff's testimony that she had "extreme mood changes, depression, enormous rage, racing thoughts, and self isolation." (A.R. 32.) However, he noted that her statements "concerning the intensity, persistence and limiting effects of these symptoms" were not credible to the extent that they were inconsistent with Plaintiff's RFC, and noted that the "objective medical findings generally [did] not substantiate the extent" of Plaintiff's allegations. *See* SSR 96-7p, 1996 WL 374186 (in evaluating credibility of an individual's statements, "must consider such factors as . . . [t]he degree to which the individual's

1  statements are consistent with the medical signs and laboratory findings and other information
2  provided by medical sources.")  The ALJ then summarized and weighed all of the medical evidence
3  regarding Plaintiff's mental functioning, including the opinions of Drs. Kollath, Gross, and
4  Williams, who opined that Plaintiff could perform at least simple work (A.R. 34-35), as well as Ms.
5  Vivrette's evaluation (A.R. 33).

6        The ALJ also noted that the objective evidence did not support Plaintiff's contentions.
7  Specifically, the ALJ discussed records from LifeLong Medical Care from July 2009 that reflected
8  that Plaintiff was in college "and apparently doing well," and that she seemed "content with her
9  life." (A.R. 458.)  The ALJ also discussed Plaintiff's September 2007 statement and the statement
10 of Ms. Evans in concluding that Plaintiff was not fully credible.  (A.R. 32-36.)  In 2007, Plaintiff
11 stated that "she went to Berkeley City College, prepared frozen food, walked, used public
12 transportation, shopped for food weekly, watched television, listened to music, and went to NA/AA
13 meetings." (A.R. 36; *see* A.R. 176-183.)  The ALJ found that these were "fairly normal activities of
14 daily living." (A.R. 36.)  Ms. Evans had noted that Plaintiff "showered, got dressed, did chores,
15 went to school Monday to Friday, had dinner, attended required in house therapy classes . . . did her
16 assigned chores and her own laundry." (A.R. 36.)  Plaintiff also "talked with others and went to
17 various events." (A.R. 36.)  The ALJ found that Ms. Evans' description of Plaintiff's daily routine
18 was "not consistent with [Plaintiff's] allegations of debility." (A.R. 36.)  He also discussed
19 Plaintiff's post-application conviction for burglary, as well as the fact that she had worked for five
20 months at her last job as an ambassador for a business district, finding that her ability to commit
21 burglary and to work were inconsistent with her allegations of disability and showed that she was
22 more capable than she alleged.  (A.R. 35.)

23       Plaintiff argues that her daily activities do not conflict with her allegations of severity, and
24 that the ALJ's consideration of her daily activities to undermine her credibility was legal error
25 because a claimant is not required to be "utterly incapacitated in order to be disabled." *Vertigan v.*
26 *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
27 1989) (noting the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried
28 on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

1 does not in any way detract from her credibility as to her overall disability")). However, the ALJ
2 did not base his decision to discount Plaintiff's testimony solely on the descriptions of her daily
3 activities. As noted, he also noted that Plaintiff's allegations were not substantiated by the objective
4 medical findings (A.R. 32), as well as her work and school history. (A.R. 35-36; A.R. 444.)

5        The court also finds that the ALJ's statements about Plaintiff's ability to commit burglary
6 and to work for five months do not undermine his finding that Plaintiff's credibility was poor.
7 Although the ALJ did not provide any explanation for his statement that Plaintiff's "actual ability to
8 commit burglary is not consistent with allegations of disability," that was not the only reason he
9 provided to discount her credibility, as discussed above, and each reason he provided finds ample
10 support in the record. Thus, the ALJ's reliance on Plaintiff's ability to commit burglary, even if
11 erroneous, amounts to harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,
12 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated
13 reasons for disbelieving a claimant's testimony, the error was harmless). Further, while Plaintiff's
14 previous work did not amount to substantial gainful activity, the ALJ found that her ability to work
15 for five months at her last job "show[ed] that she is more capable than she alleged." In weighing a
16 claimant's credibility, an ALJ may properly consider the claimant's work record. *See Thomas*, 278
17 F.3d at 958-59; *see also Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's allegation
18 of debilitating illness belied in part by fact that "she recently worked as a personal caregiver for two
19 years, and has sought out other employment since then").

20        Thus, viewing the record as a whole, the court finds that substantial evidence supports the
21 ALJ's decision to discount Plaintiff's testimony.

22        **C.**     **The ALJ Did Not Fail to Develop the Record**

23        Plaintiff next argues that the ALJ committed legal error because he did not fully develop the
24 record. Plaintiff submitted four exhibits to the ALJ on the day of the hearing, including Dr. Love's
25 and Ms. Vivrette's assessment, and Plaintiff argues that the ALJ should have held a supplemental
26 hearing to take testimony in light of "inconsistencies brought up by this new evidence." (Pl.'s Mot.
27 23.) Further, Plaintiff argues that the ALJ did not address Dr. Love's opinion and Ms. Vivrette's
28 assessment in their entirety. (Pl.'s Mot. 22-23.)

14

1 The court does not find that the ALJ failed to develop the record. While the ALJ has a "duty
2 to fully and fairly develop the record," *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)
3 (internal citation and quotation marks omitted), this duty "is triggered only when there is ambiguous
4 evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.
5 Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150); *see also* 20
6 C.F.R. § 404.1512(e); 20 C.F.R. § 416.912(e) (providing that SSA is to recontact medical sources to
7 seek "additional evidence or clarification from [a] medical source when [a report] contains a conflict
8 or ambiguity that must be resolved."). Here, the ALJ did not find that Dr. Love's opinion was
9 ambiguous; he simply found that it was not persuasive. Further, "in interpreting the evidence and
10 developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel.
11 Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d 383, 386
12 (8th Cir. 1998)). Plaintiff has shown no error.

### D. The ALJ Did Not Err in Concluding That Plaintiff's Conditions Did Not Meet or Equal a Listed Impairment

15 Plaintiff also argues that the ALJ erred by providing a "boilerplate finding" that Plaintiff did
16 not meet or equal any of the disabling impairments listed in the Commissioner's regulations at step-
17 three. (Pl.'s Mot. 24.) In his opinion, the ALJ wrote "[t]here is no evidence consistent with a
18 listing-level impairment in the record." (A.R. 31.)

19 "An ALJ must evaluate the relevant evidence before concluding that a claimant's
20 impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.
21 2001). While "[a] boilerplate finding is insufficient to support a conclusion that a claimant's
22 impairment does not" meet a listing, *Id*. (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.
23 1990)), such a finding is sufficient when the claimant "has offered no theory, plausible or
24 otherwise," as to how her impairments combined to equal a listed impairment. *Id*. at 514. Plaintiff's
25 motion does not identify what listing, if any, she believes that she meets or equals. (*See* Pl.'s Mot.
26 23-24.) In her reply, Plaintiff identifies three listings, but offers no theory as to how her
27 impairments combine to equal any of them. (Pl.'s Reply 12.) Further, the ALJ discussed the
28 medical evidence in the record in detail (A.R. 33-35). *See Gonzalez v. Sullivan*, 914 F.2d 1197,

1201 (9th Cir. 1990) (holding no error where ALJ failed to state what evidence supported conclusion that claimant's impairments did not meet or exceed listing; "four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'") Accordingly, the court finds the ALJ did not err in concluding that Plaintiff's conditions did not equal a listed impairment.

### E. The ALJ Did Not Err in Questioning the Vocational Expert

Finally, Plaintiff argues that the ALJ committed legal error when he questioned the vocational expert at the hearing. Specifically, Plaintiff argues that the record shows that she has impairments in "the ability to sustain concentration for work tasks, get along with coworkers, supervisors, and the public, and sustain routine," but that the ALJ erred by failing to pose any hypothetical to the vocational expert that "accommodated these limitations." (Pl.'s Mot. 24.)

Plaintiff's argument is unavailing. The evaluation process includes an assessment of a claimant's RFC, which is "the most [a claimant] can still do" despite physical and mental limitations caused by her impairments. 20 C.F.R. § 416.945. At step-five of the sequential evaluation process, if the ALJ finds that a claimant "cannot do [her] past relevant work because [she has] a severe impairment(s)," the ALJ "will consider the same residual functional capacity assessment [] made . . . together with [her] vocational factors ([her] age, education, and work experience) to determine if [she] can make an adjustment to other work." 20 C.F.R. § 416.920(g). Here, the ALJ posed a hypothetical to the vocational expert that included the RFC as well as the additional limitations that he had assessed Plaintiff. Specifically, the ALJ's hypothetical described a claimant with Plaintiff's age, education, and work experience who could

> perform a full range of medium work; and is able to understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and co-workers; can adapt to routine, simple work changes; and should not work in a setting which includes constant, regular contact with the general public.

(A.R. 55-56.) Contrary to Plaintiff's argument, the ALJ was not required to pose a hypothetical that included each and every limitation that Plaintiff argues is supported by the record, as he had already taken evidence regarding Plaintiff's limitations into account in formulating Plaintiff's RFC. Therefore, the ALJ committed no legal error when he questioned the vocational expert.

16

**V. Conclusion**

For the reasons stated above, the court finds that the Commissioner's final decision that Plaintiff is not disabled is supported by substantial evidence and in accordance with law. Accordingly, the court grants the Commissioner's motion for summary judgment.

IT IS SO ORDERED.

Dated: March 13, 2012



_____
DONNA M. RYU
United States Magistrate Judge